A. Three, four minutes.
Q. That quick?
A. Yes.
Q. And they actually arrived before the police arrived; correct?
A. Yes.
Q. Before EMS showed up to the accident scene, did anyone else come out to the area where the accident occurred?
A. Yes.
Q. Did anyone from the rest area come out?
A. Yes, there was people.
Q. There were people. Okay. You're not necessarily sure where they came from; correct?
A. Correct.
Q. But people showed up while you were there?
A. Yes.
Q. Did anyone tell you they actually saw the accident happen?
A. No.
Q. Have you ever spoken to anyone who has told you they saw the accident happen?
A. No.
Q. Has anyone ever called you or contacted you saying, hey, I saw how it happened?



A. No.
Q. Was traffic backed up on Route 102 as a result of this accident?
A. I'd say yes, but I can't be sure. I can't be sure, but I'd say yes.
Q. Did you leave your truck where it came to a stop? Did you leave it there until the police arrived?
A. Yes.
Q. And you indicated that you called work. You called them on your cell phone; is that right?
A. Yes.
Q. Did you call them before the emergency people arrived or after they arrived?
A. After.
Q. Did you call them before the policemen arrived or after?
A. I'm going to say after.
Q. Who did you speak to?
A. I don't recall. Safety.
Q. Is there someone at Marten Transport who deals with these kinds of issues?
A. Yes.
Q. And you called on your cell phone; is that right?
A. Yes.
Q. And how long did the conversation last with the



person you spoke to from Marten?
A. Maybe a couple minutes.
Q. And what did you tell him?
A. I told him exactly what happened and he told me to make sure that I get pictures, document it, make sure I get the name of the police department and all that kind of stuff for him, and the phone number and, you know, make sure I get a fax number so they can get the police report back, just stuff like that.
Q. Okay. Was it a male or a female that you spoke to from Marten Transport?
A. A male.
Q. And did you speak to that person that one time or did you speak to that person multiple times after the accident?
A. I'd say one more time after the accident.
Q. When did you speak to that person after you made the initial telephone call or cell phone call?
A. I don't know, maybe an hour afterwards.
Q. Okay. And you don't recall who the person was?
A. No.
Q. And what did you speak about when you called an hour or so after the accident?
A. That I got the pictures, I got the police report number and the phone number and I gave that to him.



Just basically stuff like that. And he just wanted to make sure that I got my incident report filled out correctly and make sure I put it in a separate package with the camera and put attention to him and things like that.
Q. What's an incident report?
A. That would be my documentation of what happened.
Q. So is there a procedure that you are supposed to follow whenever you're involved in an accident?
A. Yeah, they have procedures.
Q. Is your truck equipped with some type of form that you would fill out, like an incident report?
A. Yes.
Q. Is it an actual report that's prepared by Marten Transport?
A. It's prepared by me.
Q. I'm sorry. But it's a form that you fill out; correct?
A. Yes.
Q. Does it have questions and things of that nature on the form that you have to fill out boxes and questions?
A. Yes. It's a premade form, yes.
Q. And that form is produced itself by Marten Transport?

Page 86

A. Yes.
Q. You fill in the particulars; correct?
A. Correct.
Q. You give a statement on the form of how the accident happened; correct?
A. Correct.
Q. Is that part of your training when you were trained by Marten Transport in terms of how to document an accident?
A. I think there was a few minutes spent on that, yes.
Q. That's part of the orientation?
A. Yes.
Q. And that's part of Marten Transport's business practices to make sure that these accidents, if there are any, are documented in some fashion?
A. Yes.
Q. And you actually had a camera on the truck?
A. Yes. We're required to have one.
Q. For the very purpose if you're ever involved in an accident?
A. Yes.
Q. And the camera is provided by Marten Transport?
A. Yes.
Q. What type of camera was it?

Page 87

A. It's just a little paper box for emergency, you know, instant camera.
Q. How many frames are on the camera, if you recall?
A. I don't know. Seventeen (17), 10. I'm not sure how many pictures it took.
Q. But you are, in fact, required to always have a camera on the truck; correct?
A. Yes.
Q. And Marten Transport provides you with the camera; correct?
A. Yes.
Q. And you, in fact, took pictures after you spoke with the person from Marten Transport; correct?
A. Yes.
Q. And how many photographs did you take?
A. I filled the camera up, if I remember right.
Q. So you took every frame of that camera; correct?
A. Yeah, I'm sure I did.
Q. And you filled out some paperwork within an hour or so of the accident?
A. Yes.
Q. And what did you do with the camera and the paperwork that you filled out?
A. Put it in one of the envelopes and put it in the mail to them.

Page 88

Q. There's an actual envelope that Marten Transport provides to you so that you can send the camera and the paperwork back to them in the event of an accident?
A. Right. It's a basic envelope we use for sending our trips in, which I just put in. It gets to them anyway. I put attention safety and ---.
Q. I see.
A. And that's it.
Q. You didn't actually develop the photographs; did you?
A. No.
Q. At any time after the accident, did you review the photographs?
A. No. Oh ---.
Q. I'm going to ask ---.
ATTORNEY STEWART:
Well, this morning.
A. You're right.
BY ATTORNEY O'CONNOR:
Q. I know you've reviewed some photographs in preparation of your deposition, but I really was more interested in after the accident, did you review any of the photographs that you took on that particular day?

Page 89

A. Not prior to today.
Q. Not prior to today. Okay. So you didn't develop them and no one showed them to you from Marten; correct?
A. True. Correct.
Q. Were you ever told if all the photographs came out?
A. No.
Q. Or that some didn't come out?
A. No.
Q. And other than speaking to the person from Marten Transport, the safety person from Marten Transport on that day, did you speak to anyone from Marten Transport as to how this accident happened?
A. No.
Q. And when you spoke to the person from Marten Transport either in the first conversation or the second conversation on the day of the accident, did they take a recorded statement from you?
A. Not that I know of.
Q. Do you know if your telephone conversation was recorded?
A. No.
Q. You don't know?
A. I don't know.

Q. Have you seen the statement that you gave to Marten Transport as part of the incident report since you gave it to them?
ATTORNEY STEWART:
Can we just refer to it as a report?
ATTORNEY O'CONNOR:
Yes, let's do that.
ATTORNEY STEWART:
All right.
BY ATTORNEY O'CONNOR:
Q. Let me re-ask the question.
ATTORNEY STEWART:
A statement has a different term --- meaning in the law, so it's just a report or a form.
A. All right.
BY ATTORNEY O'CONNOR:
Q. Have you reviewed the report that you gave to Marten Transport at any time since you've given it to them?
A. No.
Q. In fact, it was a report that you filled out, but there was a statement of your own account as to how the accident happened contained in that report; correct?
A. Yes.



COURT REPORTER:
Are you saying incident or instant?
A. Incident. Or wait. Back to when?
BY ATTORNEY O'CONNOR:
Q. You referred to it initially as an instant report?
A. Did I say instant?
ATTORNEY O'CONNOR:
I'm sorry. That's probably me, not him.
A. It was an incident report.
BY ATTORNEY O'CONNOR:
Q. Okay. Great.
ATTORNEY STEWART:
Rhode Island accent in western PA.
BY ATTORNEY O'CONNOR:
Q. I'm sorry. I didn't mean to confuse ---. Just return to the accident scene, when you got out of your truck, was there any debris or anything of that nature on the roadway?
A. I don't remember.
Q. Would that have been something that you photographed?
A. It would have been, yes.
Q. Did you photograph the vehicles as they appeared when you got out of the truck?
A. I don't recall and I'm not sure whether I was told



to move before I got the camera out.
Q. At some point you did move the truck; correct?
A. Yes.
Q. And what was the reason for moving the truck?
A. I was told by the policemen to move it so traffic could --- we could get things moving.
Q. Right. And how long was it after the impact occurred that you moved the truck?
A. Ten, 15 minutes.
Q. Did you take any photographs prior to moving your truck?
A. I hope I did.
Q. You don't recall either way?
A. I don't recall.
Q. And I may have asked you this, and I apologize if I did, but how long was it before the police officer actually arrived at the scene?
A. I couldn't tell you. It was a very short time.
Q. Did you give a statement to the police officer of how the accident happened?
A. I'm not sure if I did or not. I don't remember what we discussed. It was that quick and ---.
Q. You don't remember anything you told the police officer?
A. No.



Q. And do you remember anything he said to you?
A. No. I mean, he just basically gave my license back and here's your report number and that was it, you know.
Q. Okay. I'm just going to show you some photographs. These are some photographs that were produced to us by your attorney as part of the discovery in this case. And we can ultimately mark them as exhibits if you would. What I'd like to do is even though they did give them to us as one package and there are 29 photographs in all, I want to mark one through 14 the first collective exhibit. We can call them Plaintiff's One; okay? And these are color photocopies of photographs that have been provided to us. Can you just take a moment to look at those photographs?
WITNESS COMPLIES
(Plaintiff's Exhibit Number One marked for identification.)
OFF RECORD DISCUSSION
BY ATTORNEY O'CONNOR:
Q. Have you had an opportunity to review the photographs that I've just handed to you and which will be collectively marked as Plaintiff's Exhibit One?